**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Heather J Musick,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-25-02160-PHX-MTL<br><br>**ORDER** |

At issue is the denial of Plaintiff Heather Musick's application for a period of disability and disability insurance benefits by the Social Security Administration ("SSA"). Plaintiff filed a Complaint with this Court seeking judicial review of that denial. (Doc. 1.) After reviewing the briefs (Docs. 12, 16, 17) and the Administrative Record (Doc. 8, "A.R."), the Court affirms.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff filed for Title II Social Security disability insurance benefits on February 1, 2022, alleging her disability began on July 1, 2017. (Doc. 12 at 2.) The SSA denied her claim on June 7, 2024. (*Id.*) On May 13, 2025, the SSA Appeals Council denied review. (*Id.*) Plaintiff now asks the Court to review the denial pursuant to 42 U.S.C. § 405(g). (*Id.*)

### B.    ALJ Determination

The ALJ concluded that Plaintiff has not engaged in substantial gainful activity since July 1, 2017, the alleged onset date. (A.R. at 44.) The ALJ then determined that

Plaintiff had the following severe impairments: thrombotic thrombocytopenic purpura (TTP), thrombocytopenia, degenerative disc disease of the lumbar spine, interstitial lung disease, dermatopolymyositis, coronary artery disease, iron deficiency, inflammatory arthritis, and obesity. (*Id.*) The ALJ next concluded that Plaintiff did "not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (*Id.* at 45.) The ALJ then determined that Plaintiff had the following residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) except she could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequently reach, handle, and finger with the bilateral upper extremities; could have occasional exposure to extreme temperatures, fumes, odors, dusts, gases, and pulmonary irritants; could have occasional exposure to hazards, but no exposure to unprotected heights and dangerous moving machinery; and could have no exposure to infectious biohazards.

(*Id.* at 46.)

The ALJ found that Plaintiff was unable to perform past relevant work, but she could perform a significant number of jobs in the national economy due to her age, education, work experience, and RFC. (*Id.* at 50.) Accordingly, the ALJ concluded that Plaintiff was not disabled from the alleged onset date through the date of the decision. (*Id.* at 51.)

## II.    LEGAL STANDARD

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the ALJ's determination only if it is unsupported by substantial evidence or if it is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the entire record. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (citation omitted). Generally,

"[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The substantial evidence threshold "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 587 U.S. 97, 108 (2019); *see also Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (noting substantial evidence "is an extremely deferential standard").

To determine whether a claimant is disabled, the ALJ follows a five-step process. *See* 20 C.F.R. §§ 416.920(a)(4), 404.1520(a)(4). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. §§ 416.920(a)(4)(i), (b), 404.1520(a)(4)(i), (b). If so, the claimant is not disabled, and the inquiry ends. *Id.* If the claimant is not working in a substantially gainful activity, then the claimant's case proceeds to step two. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* §§ 416.920(a)(4)(ii), (c), 404.1520(a)(4)(ii), (c). If not, the claimant is not disabled, and the inquiry ends. *Id.* If the claimant's impairment is severe, then the inquiry proceeds to step three. *See id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of Part 404. *Id.* §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, then the ALJ assesses the claimant's RFC to determine whether the claimant is still capable of performing past relevant work before moving to step four. *Id.* §§ 416.920(a)(4)(iv), (e)-(f), 404.1520(a)(4)(iv), (e)-(f). At step four, the ALJ must determine whether the claimant retains the RFC to perform the requirements of past relevant work. *Id.* If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* §§ 416.920(a)(4)(v), (g), 404.1520(a)(4)(v), (g). If so,

the claimant is not disabled; if not, the claimant is disabled. *Id.*

**III.   DISCUSSION**

Plaintiff argues the ALJ erred by improperly rejecting (1) certain medical evidence from the RFC determination, (2) Plaintiff's symptom testimony, and (3) lay witness testimony. (Doc. 12 at 8-14.) She also argues that the ALJ's step-five determination is unsupported by substantial evidence. The Court considers each claim in turn.

**A.   Medical Evidence**

Plaintiff argues that the "ALJ's RFC finding failed to include all of the limitations caused by Musick's severe impairments," and the "ALJ improperly discounted critical aspects of the opinions of Musick's treating providers," FNP Barbara Benincaso and FNP Cheryl Poisson. (*Id.* at 8-10.)

The ALJ considered multiple impairments suffered by Plaintiff to be severe, and Plaintiff asserted that several of these impairments, "including TTP, thrombocytopenia, dermatomyositis, and coronary artery disease," "can result in swelling in a patient's legs and feet." (*Id.* at 8.) Plaintiff's treating provider, FNP Cheryl Poisson, noted an edema, severity 1+, in Plaintiff's ankle during a visit on June 26, 2017. (A.R. at 929.) Poisson recommended that Plaintiff "elevate Left leg as much as possible to reduce pooling of blood and clot forming." (*Id.* at 928-29.) On November 16, 2017, Plaintiff visited FNP Barbara Benincaso for leg pain. Benincaso recommended that Plaintiff "[e]levate leg when possible . . . [wear] light support stockings," and use pain medication if needed. (*Id.* at 915.) Plaintiff was seen by medical providers again on May 1, 2018, and was treated for pain and swelling in her leg. (*Id.* at 2039.) Then, during a visit on December 14, 2020, Dr. Trent Smith noted Plaintiff "gets swelling in her legs if she stands for a few hours at a time." (*Id.* at 2240.)

An ALJ must assess all the medical evidence when formulating a claimant's RFC. 20 C.F.R. § 404.1545(a)(1). RFC is an administrative, not medical, finding concerning a claimant's ability to work. *Id.* § 404.1546. In examining medical evidence, an ALJ must articulate how persuasive he or she finds all the medical opinions from each doctor or other

source. *Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023). Under the revised regulations applicable here,[*] supportability and consistency are the "most important" factors for an ALJ to consider in this analysis. *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)). Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence. 20 C.F.R. § 404.1520c(c)(1). Consistency measures how a medical source compares with others; "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). "[A]n ALJ need only provide 'an explanation supported by substantial evidence,'" not account for every possibility. *See Kitchen*, 82 F.4th at 740 (quoting *Woods*, 32 F.4th at 792).

The Court finds that substantial evidence supports the ALJ's evaluation of Plaintiff's limitations. Plaintiff contends that the ALJ's RFC did not account for the time required for Plaintiff to elevate her legs during the workday. (Doc. 12 at 8-9.) Plaintiff argues her need to "elevate her left leg as much as possible to prevent pooling of blood and clot forming" precludes her ability to maintain employment. (*Id.* at 8.) The ALJ disagreed with this limitation and found that the "objective evidence fail[ed] to establish that the claimant was unable to perform all work activity." (A.R. at 48.)

The ALJ also discussed Plaintiff's TTP treatment in 2019 and pointed to evidence that the treatment was successful. (*See* A.R. at 1386.) By late 2019, Plaintiff was "stable and just being monitored at [that] point," according to her medical provider. (*Id.*) Her medical provider found similar results in June 2022 and June 2023 noting, "no issues with the thrombocytopenia now," and "TTP is very quiet now." (A.R. at 3988, 3999.) Plaintiff's doctor also suspected she had inflammatory arthritis in December 2019. (*Id.* at 2229.) But in September 2020, her doctor noted inflammatory arthritis was "responsive to Rituxan and

---

[*] Plaintiff filed her benefits application after March 27, 2017, so the revised SSA regulations govern how the ALJ evaluates and considers medical opinions. *Woods v. Kijakazi*, 32 F.4th 785, 790 (9th Cir. 2022).

prednisone." (*Id.* at 2264.) In sum, the ALJ found that treatments and medications had largely "controlled" or "resolved" impairments. (A.R. at 48); *see Garner v. Colvin*, No. 6:13-CV-01428-JO, 2015 WL 478450 (D. Or. Feb. 4, 2015) ("Medical conditions that are effectively controlled and symptoms that are alleviated by medications are not disabling." (citing *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006))).

The Court also finds that substantial evidence supports the ALJ's evaluation of the treatment evidence. While the treating providers noted Plaintiff's symptoms and impairments, the ALJ cited substantial evidence that those conditions had "improved," were "in remission," or were "rare." (*See* A.R. at 48.) For example, in June 2021, her medical provider noted her Rituxan treatments were helping with her TTP. (*Id.* at 2245.) In June 2022, her doctor opined that Plaintiff's inflammatory arthritis was "in remission from [her] view." (A.R. at 3988.) Then, in June 2023, her doctor noted that Plaintiff's inflammatory arthritis was stable and caused only occasional, infrequent swelling. (A.R. at 3999.) Accordingly, the ALJ adequately explained his evaluation of the medical evidence and medical opinions under the applicable regulations, and substantial evidence supports his conclusions.

### B.   Symptom Testimony

Plaintiff also asserts that the ALJ improperly rejected her symptom testimony. She argues the ALJ failed to "identify any specific records contrary to any of [Plaintiff's] specific statements regarding her limitations." (Doc. 17 at 5.) And she points to her testimony that "her combined impairments and the treatments she needs for them cause symptom exacerbations which result in a need to elevate the legs, excessive time off task, or absences from work." (*Id.* at 7.)

In evaluating a claimant's subjective symptom testimony, an ALJ applies a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.*

*Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). If there is such objective evidence, and "no evidence of malingering," "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The question on review is not whether the Court is convinced, but whether the ALJ's rationale is "clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (emphasis added). In making this determination, the ALJ may consider inconsistencies between the claimant's testimony and the objective medical evidence, treatment history, and daily activities. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

In his two-step analysis, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [those] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (A.R. at 46.) Because the ALJ made no finding of malingering, the question is whether he articulated specific, clear, and convincing reasons for discounting Plaintiff's testimony.

The ALJ did so and found that Plaintiff's "overall treatment history [was] inconsistent with her allegations." (A.R. at 48.) He explained that though she had symptoms, "the record show[ed] the treatment was generally successful in controlling those symptoms." (*Id.*); *see Woznick v. Colvin*, No. 6:15-CV-00111-AA, 2016 WL 1718363, at *4 (D. Or. Apr. 29, 2016) ("Positive response to treatment is a valid credibility consideration, and evidence of conservative treatment may properly discredit a claimant's allegations of disabling symptoms."). For example, Plaintiff was undergoing plasmapheresis treatment for TTP. (A.R. at 937.) But by June 2019, her doctor noted "[p]atient is overall feeling well and pain is well controlled . . . [s]he is only taking med[ication] as needed." (A.R. at 1306.) In 2022, she reportedly tolerated medications with little or no side effects. (A.R. at 258.)

Further, her daily activities were inconsistent with disabling limitations. She helped

with household chores, drove short distances, and shopped for groceries with others. (A.R. at 49); *see Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."). The ALJ therefore provided specific, clear, and convincing reasons, supported by substantial evidence, for discounting Plaintiff's symptom testimony.

### C.    Lay Witness Testimony

Plaintiff next contends that the ALJ improperly rejected the lay witness testimony of her husband and mother-in-law, emphasizing how they witnessed her limp and inability to finish tasks. (Doc. 12 at 13-14.) Plaintiff argues that these witnesses "provided relevant details that [she] did not discuss in her own testimony." (*Id.* at 14.)

"Where the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness' testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane reasons to reject the lay witness testimony." *Caleb H. v. Saul*, No. 4:20-CV-5006-EFS, 2020 WL 7680556, at *8 (E.D. Wash. Nov. 18, 2020). Although the witnesses provided some additional details, their testimony largely echoed Plaintiff's own account of the severity of her impairments. As explained above, the ALJ gave clear and convincing reasons for discounting Plaintiff's subjective symptom testimony, and those same reasons are germane grounds for discounting the similar statements of the lay witness. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."), *superseded by statute on other grounds*.

### D.    Step Five Determination

Finally, Plaintiff argues that the ALJ's step-five finding is unsupported by substantial evidence because he did not "pose all of [her] limitations" when asking the

Vocational Expert ("VE") about which occupations Plaintiff could perform. (Doc. 12 at 14-15.)

At step five, the ALJ considers a claimant's RFC, age, education, and work experience to determine whether a claimant can make an adjustment to other work. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v), (g). If a claimant can make the adjustment to other work, the claimant is not disabled. *Id.* To make this determination, the ALJ may rely on a VE to testify as to "(1) what jobs the claimant, given [her RFC], would be able to do; and (2) the availability of such jobs in the national economy. At the hearing, the ALJ poses hypothetical questions to the [VE] that 'set out all of the claimant's impairments' for the [VE's] consideration." *Tackett*, 180 F.3d at 1101 (quoting *Gamer v. Sec'y of Health and Hum. Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)).

"Where the hypothetical the ALJ poses to the VE contains all of the limitations the ALJ finds credible and supported by substantial evidence in the record, the 'ALJ's reliance on testimony the VE gave in response to the hypothetical . . . [is] proper.'" *Antahn v. Comm'r of Soc. Sec. Admin.*, No. CV-23-00078-PHX-DLR, 2024 WL 3200696, at *5 (D. Ariz. June 27, 2024); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) (holding that the ALJ did not err in omitting limitations unsupported by substantial evidence in the record from the hypothetical posed to the VE). As discussed, substantial evidence supports the ALJ's evaluation of Plaintiff's testimony, the lay witness testimony, and the medical evidence. Thus, the ALJ did not err in the step-five determination.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that substantial evidence supports the ALJ's decision and will deny Plaintiff's request for an award of benefits or remand.

**IT IS ORDERED affirming** the ALJ's decision (A.R. at 42-52).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and close this case.

Dated this 28th day of July, 2026.

Michael T. Liburdi
United States District Judge

- 10 -